Case number 22-5304, Jason Leopold, at balance, v. J. Thomas Manger, Chief, United States Capitol Police, and Ronald Gregory, Acting Inspector General of the United States Capitol Police. Mr. Leight, for the at balance, Mr. Cohen, for the at police. Morning, Mr. Leight, you may proceed when you're ready. Good morning. Thank you, and may it please the court, this is Jeffrey Leight on behalf of Plaintiff Appellant Jason Leopold. Since there are several issues in this case, I wanted to begin by summarizing what it is that we're asking the court to do. For the subset of Capitol Police directives that do not contain security information, we're asking the court to hold that under the first step of the common law test, the directives are public records. And at the second step, to remand for the district court to decide whether portions of the directive can be segregated and released. For the documents that do have security information, and this includes some of the directives and some of the IG material, we're asking that this court to hold that there is a segregability requirement in Section 1979, and remand for the defendants to explain whether there is any non-security information that can be segregated and released. We're not asking the court to determine whether the district court or the Capitol Police erred in their judgment in terms of what's security information or not. We're asking simply for the court to resolve a question of statutory interpretation for 1979, that is, whether it applies to documents or information. And finally, as to the IG reports, we're requesting a reversal and an order that the government comply with the IG Act public posting requirement. Again, the court only needs to resolve the statutory question as to whether the public posting requirement applies to the Capitol Police. On remand, the Capitol Police would be free to assert Section 1979 or any other privileges that they may have to portions of the IG report. And to begin with, I want to start with the issue of whether the directives are public records. And we think that there's a pretty straightforward definition in WLF-2, which is that you look at whether the statements were created to memorialize a decision or statement that has legal significance. And the Capitol Police directives meet that test here. One of the ways in which the term legal significance can apply is that it's binding on a party. And here it's binding. These directives are binding on the Capitol Police and its employees. The government contends that legal significance only counts if it's binding on members of the public. But there's no authority and no suggestion in WLF-2 that that's the case. And in fact, it cuts against the wording in WLF-2 that the term legal significance should be broadly construed. The government also in the district court rely on their argument that the directives are preliminary. But in WLF-2, this court never really explained where it got the word preliminary from or why it was incorporating that into its decision. And I think it's worth taking a moment to ask why preliminary materials are not covered by the common law right of access. And in a whole variety of areas of law, we find that preliminary disclosure of preliminary materials tends to inhibit candid discussion, reveal an individual's raw thoughts, might often be incorrect. And this stands in contrast to official final policies. The California Supreme Court and some subsequent cases there actually looked at WLF-2 and its use of the phrase preliminary material and elaborated on that to a great extent and looked at factors such as whether the material is tentative or interlocutory, whether it reflects the raw and immature thoughts of the authors. And none of those indicia of preliminarity apply here. If we were to agree with you that the written directives of public record, then we would proceed to the balancing test to determine whether the district court abutes its discretion in concluding that the balance of interest weighed against disclosure. And I think you've argued that at least the district court should have had some kind of further information, bond index style about the nature of these directives. Is that uncharted waters? Have we ever in this kind of a context made that kind of demand? Well, in WLF-1, the court remanded for a Vaughn-like index to be prepared. But I think it's just a sort of basic premise of the adversarial process that both parties have access to the information that's needed to mount an effective argument and that the district court have the information before it to make a reasoned decision. And then that the appellate court has a record basis on which to determine whether to affirm. So there are a lot of FOIA cases which discuss this. And it applies here, this obviously isn't a FOIA case, but FOIA occupies a universe where there is a great imbalance between the information that the parties have and the purpose of the Vaughn index is to remedy that to some extent so that the adversarial system can play out. The same is true here. Just going back to the very beginning, the complaint in this case invoked only the mandamus jurisdiction, 1361. And if we were to agree with the other circuits that have held that's not a viable basis for subject matter jurisdiction and lawsuits against officials in the legislative branch, is that alone a reason that we would have to dismiss your claim, your case? No, I think that it's largely an academic matter whether jurisdiction is proper under the Mandamus Act or the general federal jurisdiction question. The reason I say that is because when in Swan v. Clinton, the general federal jurisdiction statute was said to have been essentially properly relied upon, but that it's the equivalent of an injunction under the general federal jurisdiction statute is roughly the equivalent of seeking a writ of mandamus. And since this case was dismissed, of course, without prejudice, the effect of doing that would simply be for plaintiff to refile the exact same case, adding in the general federal question statute as a reference. And I don't think that would be in the interest of judicial efficiency to proceed. But it's not just a matter of pleading. It's a matter of what do you have to show to properly invoke subject matter jurisdiction. You have to show a clear and indisputable right to relief, no other remedy available, and clear duty to act. And then if you meet all three of those, you still got to show that under the court's equitable discretion, it should order the writ. So how are we in the realm of clear and indisputable right to relief or clear duty to act? So I agree with you that those mandamus standards are applicable here. And there's no question that there's no alternative form of relief here, number one. And I guess the real nub of the question then is, number one, is there a right to relief, which goes to the merits? And number two, is this right so clear and indisputable? And on that prong, I think that it is important to look at the specific relief that we're asking for here. Because I would agree that if this was merely an error of judgment on the part of the capital police in determining what to release and what not to release, that probably would not meet the mandamus test. But what we have here is a question of statutory interpretation for 1979. And we also have for the common law issue a question of law as to what is even required. Once this court sets forth what the proper standard is, it may be that there is no dispute at all. In fact, that the parties agree as to what material is properly released and not. But since the capital police haven't applied the proper standard in the first place, that is this. Well, let's suppose the capital police referred the matter to their general counsel, others. And they issued a written finding that we've balanced everything under all of the relevant precedent. And they cite all of the cases in common law right of access. And we believe that under that balance, none of these documents should be disclosed. What do we do with that? What happens under those facts? Well, you know, we're not at that stage yet. And I think it's important that we not get too far. It's a hypothetical question. I'm just trying to understand the ramifications of your argument here. I understand. It's really it's going to depend a lot on the context in which that comes up. Because if the police make a decision where they take into account segregability and do all the balancing and whatnot and come up with a decision. And that error that we see is just one of judgment or discretion. Then there's nothing we do at that point. We lose at that point. I thought I just heard you a couple of minutes ago say that the claim is under 1979. I thought that was an obstacle to your case because it supplants the common law right of access as the documents that are designated as security information. I'm not sure if maybe I if I misspoke on it. Our claim is brought under the Mandamus Act, the general common law right of access, and the general federal question jurisdiction. But to USC 1979, the purpose of it here is that the that is the grounds for withholding. And both the district court and the Capitol police made an error of law in interpreting it. And so under this court's doctrine of non statutory judicial review, we are we have asked for review of that agency decision. Obviously, I'm sorry. Go ahead. Obviously, obviously, in most cases, the APA applies. And so the non statutory judicial review is maybe not as familiar a doctrine, but it has largely the same elements as a writ of mandamus. But when you say that the Capitol police erred in applying 1979, you mean that they wrongly designated documents as security information? Sort of what I'm arguing is that they. Interpreted the statute to mean documents can be withheld and they don't need to be segregated, even though the statute specifically says information. And because of that incorrect interpretation of the statute, they never decided in the first instance whether there is any information that can be released. Is that is that claim really in your complaint? I mean. As I understand it, that would be a claim for failure, a claim arising under or under 30, 31, but for failure to appropriately apply 1979, not a claim for. Right of access. Is that too technical in your view? Well, the the Capitol police hadn't invoked 1979 at the time the case was filed. That's something that happened at the summary judgment stage or the motion to dismiss stage. So that was the first opportunity we had to explain why we thought that we had a right to challenge the decision that they made. And as I understand the way the. Congress is using it is or the Capitol police is is using it is not that you then get to inquire how they're administering that regime, but that that is the substitute regime. And and therefore it it supplants the common law right of access wholesale. It doesn't infuse it or inform it, it supplants it. And if that's right, then, you know, where it applies, it preempts and the. The Congress itself gets to decide what counts as security information according to its specified procedures. I mean, I I think that's that's right, to an extent, which is that to the where the statute applies, that is where there is actually security information. It preempts or supplants the common law. But the question in the first instance. Right. Did Congress say that security information can be withheld or that non security information can be withheld simply because it's in a document that contains security information? Congress didn't say that, but isn't the Capitol police position. And I understand you object that it's a blunderbuss position, but isn't their position that these directives are security information? They are saying that they are security information and that they contain sensitive security information. They've never said that every single word in these documents cannot be released because of security information. In fact, we have put in the record an example of one or two that had been publicly released. And so the court can see, you know, there are these different sections laid out. Perhaps some of the sections go into some issues that will involve security information. Some of them are more preliminary. You know, the balancing of those different sections is something for the court to decide at step two of the common law right of access. But as far as the question is, is it if the if. 1979 supplants the common right of action and then the question of what is the appropriate granularity or what's the appropriate unit size of what is security information? Is it really for the court to say, or is that something that is for the US Capitol police to say under its procedures, you know, under its regime? Well, look, I think if the if the Capitol police said we went and we reviewed line by line every directive that we said is contained security information and we determined that all of it is security information, then I think that's correct. There's there's nothing left for the court to do. But that's never happened. Right. The what we're asking for here as a remedy is that the Capitol police be ordered to and maybe it doesn't have to be line by line. Maybe it can be section by section, but that they review and determine whether there is anything they think is non security information that can be released. And in fact, that's something that they've done in the past when Congress has wanted to release information about January six, the Capitol police then went back to the board and sort of discussed whether this can be released. So this is, you know, very much in their in their ability to do if they would if they had issued statement like you see in a typical FOIA case that says we've reviewed and we've determined that no segregable information exists. And here's why. Then I agree that would be the end of it. That just hasn't happened here. Can you cite to any authority for a court in a common law right of access case to order the official to basically enforce the segregability requirement? So I think particularly instructive on this is this court's decision last year in in Ray L.A. Times, which is 28th 4th to 92 because in that case, this court found that the district court court had aired by refusing to consider redaction as an alternative to complete withholding under the common law right of access. And prior to that, in 2021, this court issued a decision case called CNN versus FBI. And in that case, which involved the common law right of access, the district court had applied the Hubbard factors and had done that in a way that it applied them to all of the documents that were at issue in litigation or alternatively documents as a whole. And this court reversed and remanded and said, no, you need to look at the precise portions that are redacted versus not redacted and make a determination as to those granular pieces of information. What is the public's right of interest? What are the secrecy needs on that level of granularity? Let me ask you about your efforts to get the OIG reports under 1909 there. You take this dynamic incorporation of the Inspector General Act as your as your starting point, but even if we agree with you on that. Does 404 E1C mandate the same disclosure because it has this caveat that's nothing in this subsection shall be construed as authorizing an inspector general to publicly disclose information otherwise prohibited from disclosure by law. And as as we've been talking about 17, I mean, 1979, as implemented by order 1716, according to the Capitol Police, prohibits the disclosure of all OIG information. So the so the caveat in the dynamically incorporated portion of the Inspector General Act seems to give up the ground. So I agree, in part, there is that that provision that, you know, not notwithstanding other provisions of law, which I think would properly incorporate section 1979, that is, if portions of the IG reports contain security information, then the Capitol Police would be able to withhold those portions of them. But the order that was issued never said that. And in fact, when plaintiffs argued in our brief, we tried to explain why we thought that there were portions of the IG report that were not security information. The defendant didn't disagree with that and wrote in their motion that the order allows for the withholding of not just security information, but all IG information. So the question then is, is this order on par with the with the law as understood in the Inspector General Act? And I think it's important to recognize here that under 1979, there is a provision for the Capitol Police to implement regulations. There's a process they need to go through that to promulgate formal regulations, which they did not do in this case. So you're arguing that the otherwise prohibited from disclosure by law that that the order 17.16 is not law within the meaning of that caveat? That's correct. If it were otherwise, then every agency out there could simply say we direct that the Inspector General not publish their reports, which would defeat the entire purpose of this amendment to the Inspector General report. In fact, it does sort of seem potentially the case that that's what happened here, that in response to the Congress amending the Inspector General Act that shortly thereafter, this order came out that said no, the public posting requirement will not be honored. Is that argument in your brief? I made it to the district court. I did not reiterate it to this court. I don't think it's an essential part of our position. I just thought it would add some context. I just also wanted to, on the Larson-Dugan question, I just had one thing I wanted to add, if there aren't any other questions, if that's all right. Let's take a moment. I think we've taken you far over your time and we're ready to hear from the government. But if you have one point you want to make about Larson-Dugan, we'll hear it. Just this, that the questions earlier relating to that from the previous case where counsel had referred to the two possibilities, statutory authority versus unconstitutional act. To be very concise, what the Supreme Court was doing with that language was distinguishing between ultra virus acts and merely tortious conduct. And the way that we've set up this case, we are alleging that there is ultra virus conduct and the failure to follow the clear language of the statute, which only gives authority to withhold under 1979 things that are security information and under the common law, which under WLF 2, it merges with the merits. Thank you. We'll give you the rebuttal that you've requested. Thank you. We'll hear now again from Mr. Pullum. All right. Morning again. Again, I'm happy to answer any questions on the arguments made in the brief, but a lot of the colloquy I just heard focused on section 1979. So I thought I'd start there to just underscore how this statute works. 1979 is a limitation on the board authority to release certain information. It does not provide anyone with a right of access. It does not require the board to release anything at all. And it certainly does not have a segregability requirement, such as is present in FOIA. So, to the extent that the plaintiff is trying to bring some kind of non statutory review claim, which is, I think. The court noted is not in the in the complaint. This clearly would not meet the requirements for non statutory review, because there's been no kind of clear and palpable transgression of a statutory command here. So, I think really that is. Just not something the court needs to to worry about, because it does not fit within that category, even if it were properly pled here. In the record, Mr. Pullum, there's a reference to the designation of information as security information. Oh, I'm sorry. On the non security information directives, it's done by who actually makes these determinations. There's a reference to some team I'm referring to. Yes. So I think review team. I wonder where who they are and how do we know that they legitimately have unreviewable discretion to make these determinations? My understanding is that these were government officials within the Capitol police organization. I'm not sure exactly where or what their precise titles were, but they were within the Capitol police. And I think the, as your honor indicated, our argument here is that the way 1979 is structured, it gives the. Decision to the Capitol police organization to make these decisions and information can be released only if the board makes a specific determination. And. And that determination certainly wasn't made here. There's no allegation that the board determined that certain information could be released and that that information was was not provided. But again, this statute just is not set up as an equivalent to or an equivalent to any kind of access providing statute. So, I think any reliance on 1979 is kind of misplaced here. A couple of other. Points I'd like to hit with respect to redaction. I think there was a question on whether a court has ever required a coordinate branch to redact its documents under the common law right of action. I'm familiar with one of the cases that plaintiff's counsel cited the CNN versus FBI case, and that involved judicial records. And I think that. The Supreme Court recognized in Nixon when it first talked about the common law right of access. It said that courts have supervisory authority with respect to their records. This court made a similar point in Ray Leopold, where it said that kind of. Decisions about access and providing public access to judicial records is the responsibility of the judicial branch. The judicial branch does not have supervisory authority over the record keeping practices coordinate branches, nor is it responsible for. Determining questions of access and transparency. Those questions are up to. The other branch here, the legislative branch. And there's no statutory authority. That's been pointed to that would wholesale establish an alternative regime or a supplanting regime. That's right. I mean, the only kind of wholesale regime is FOIA, which deliberately excludes Congress from its scope. We have the Dow case where the criminal rule displaces the common law. That's right. Right of access. That's right. But to the extent that that Mr. Light is arguing that the documents have been wrongly designated as security information, why isn't that part of his claim? It's sort of saying that the extent that that the Capitol police are relying on 1979, they're exceeding its bounds. They're basically acting ultra virus under it. Yeah, so I think two points here. One, I don't think that that statute could provide, as I said before, I don't think that statute could provide a kind of grounding for an ultra virus analysis because there's no restriction in that statute, clear restriction that's been violated. This sounds very much like an error in the application of the statute, which does not amount to ultra virus. And with respect to the alleged error. What I heard counsel to say this morning was that he doesn't disagree with designations of identification of security information. What he disagrees with is the level of granularity so that it can't be done on a document basis. In other words, he says, if there is something that counts as security information in a document, and there is other information that on its own would not be security information, then you can't say that whole document is security information. And he actually has pretty robust authority for the notion that across the US code that there's a different treatment of, especially in disclosure statutes of documents versus information, and that when Congress uses information, it does typically mean information within a larger unit. So that's I think that's his argument. This depends on, I think, largely, this is driven by comparisons to FOIA, which is a statute that provides a right of public access, imposes on the agency a burden to demonstrate that information falls within a particular exemption and then has a segregability requirement saying, okay, even if you satisfy your burden under exemptions, you still have to segregate and release the rest. Section 1979 doesn't have any of those features, no right of access, no segregability, and it's not making any kind of distinction between information and records as a whole. If we think about, as I was suggesting to Mr. Knight, if we think about 1979 as a different regime that supplants the common law right of access, by its terms, it is limited to security information. It just is, it only speaks to it. It doesn't speak more generally to information within the custody of the Capitol Police. This is notwithstanding, this is after the definitions for substantive provision, is any security information in possession of the Capitol Police may be released only if the Capitol Police Board determines that the release will not compromise security. And so if you think of the sort of footprint of 1979 as limited to security information, then it doesn't displace the common law right of access with respect to information that is not security information. So it is the statute's own edge that allows Mr. Light's claim to go forward on that argument. I mean, I'm not sure that's the best way to look at that here because it is, because of the many different ways it displaces the common law, one by providing a default of secrecy, one by setting… As to security information, the only information it addresses. But it doesn't say what the kind of level of granularity is. And there are some regimes, for example, classified information, you can have a 10-page document. And if there's one paragraph that's classified, that document is classified for purposes of the proper executive order. Now, you know, FOIA comes in with a segregability requirement that is separate. But at least, so I'm saying there are systems where we treat documents holistically. And I think that's what security information is doing here. Your best textual argument in response to Mr. Light's argument that this statute itself tells you the level of granularity by using, and I believe only using, the term information. And although it gives the Capitol Police Board authority to promulgate regulations, we don't have a regulation that interprets this term. That's right. But I think the statute also displaces a court from making the determination. I mean, this statute is kind of suffused with deference and discretion to the Capitol Police to decide what is sensitive, which is an inherently kind of discretionary and judgment-laden call. So do you go so far as to say that the determination of security information is not ever subject to review? I think that's right. There's no provision of judicial review in Section 1979. The Capitol Police and its board are not agencies under the APA, so you can't seek judicial review that way. Council has said, well, we can get non-statutory review. And I think I explained why we don't think that applies here, because there's nothing in this, no command in this statute that has been clearly disregarded. I mean, this court's test for non-statutory review is really quite strenuous, quite rigorous. It has to be kind of no authority whatsoever, not a garden variety claim error, and jurisdictional or nearly so. The court has recent cases, Federal Express, the Changi case. It's a very, very high bar, and I don't think that there's anything in this statute that could ground ultra-virus review. I'm happy to answer any other questions about sovereign immunity that we didn't get to, or the scope of the common law right of access that we believe does not extend to documents in the legislative branch. Otherwise, I'm happy to rest on our brief. Thank you. Thank you. Mr. Light, we'll hear from you briefly on rebuttal. Thank you, Your Honor. There's a lot of moving pieces here, but the issue of what I've been calling segregability seems to be at the heart of a lot of it, and so I wanted to explain just a little bit more what I mean by that. In terms of the common law, when a document is a public record, then a presumptive right of access attaches to it, at which point the government can overcome that by showing the need for secrecy, and a balancing takes place. But the default is that public records in this country are to be disclosed, and so that's the starting point. 1979 then comes along and is in derogation of that common law, and so to the extent it applies, it will displace the common law. However, we need to be careful to read it exactly as Congress wrote it, and this is not an instance of, you know, field preemption or something like that, where there's a statute that completely displaces the entire common law regime. This is just a single nondisclosure statute. It tells the court when things that would otherwise be disclosable should not be disclosed, but if the statute doesn't apply and the government can't meet its burden on the second part of the test, then it needed to be disclosed. But to the extent that you prevail, you have to still show us that there's kind of a clear and indisputable right to relief. I mean, what we've said before, you know, last term in Illinois v. Ferrero, the Equal Rights Amendment case, we said, you know, even if the plaintiff has a legal argument with some force, that doesn't get you over the mandamus threshold. It's got to be an argument that is indisputable. Do you agree that that's the standard you have to meet? Yes, but the standard is once, I mean, with respect to Section 1979, the standard is once the statute is construed, the right needs to be clear and irrefutable. So our argument here is that the court should construe the statute and remand for the court to determine, for the district court to determine if at that point it is clear and indisputable. As far as the common law issue, you know, whatever the government may be wishing to do later, at this stage we're bound by, you're bound by WLF 2, which says the ultra virus question merges with the merits of the common law right of access. And so that is the equivalent test to mandamus, the clear and indisputable right of access. It's ultra virus and you meet all the other tests of mandamus, you're entitled to relief. Mandamus says it's non-ministerial. That's right. Is that the same thing as ultra virus? Doesn't seem like. Those are, those are two separate things, right? But the disclosure of a document is a ministerial act. We're not asking for the court to order the police to determine what a reasonable rate is for a freight carrier, right? We're asking the ministerial act to give us this document. Thank you. Okay. Thank you. The case is submitted. Thank you.
judges: Pillard, Wilkins, Childs